## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

MALISA ELIZABETH JENNRICH,

|                                         Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION, LLC;
CREDIT ONE BANK, N.A., and SYNOVUS
BANK,

|                                         Defendants.

CASE NO.:   3:25-cv-905

**JURY TRIAL DEMANDED**

### COMPLAINT

Malisa Elizabeth Jennrich ("Plaintiff" or "Ms. Jennrich") brings this Complaint against Equifax Information Services LLC ("Equifax" or "Defendant Equifax"); Experian Information Solutions, Inc. ("Experian" or "Defendant Experian"); Trans Union, LLC ("Trans Union" or "Defendant Trans Union") (collectively, the "Credit Bureau Defendants"); Credit One Bank, N.A. ("Credit One Bank" or "Defendant Credit One Bank"); and Synovus Bank ("Synovus Bank" or "Defendant Synovus Bank") (collectively, "Defendants") for actual, statutory, and punitive damages, costs, and attorneys' fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.,* arising out of Defendants' continued inaccurate reporting of fraudulent credit accounts on Plaintiff's credit reports after Plaintiff put Defendants on notice of the fraudulent nature of the credit accounts with supporting documentation evidencing the fraud, including a police report and FTC Identity Theft Report.

### PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.      The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

3.      The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added).

4.      The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

5.      In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of information, 15 U.S.C. § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

6.      This case concerns the Defendants' inaccurate reporting of two fraudulent accounts on Plaintiff's credit reports. Defendants inaccurately reported the fraudulent accounts for years despite Plaintiff's multiple disputes with Defendants putting them on notice that the disputed accounts 1) do not belong to her, 2) were not opened with her authorization, and, consequently, 3) were fraudulently opened by an identity thief.

7.      Accordingly, Plaintiff brings claims against Equifax, Experian, and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of her credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and for the Credit Bureau Defendants' repeated failure to fulfill their reinvestigation duties, in violation of the FCRA, 15 U.S.C. § 1681i.

8.      Plaintiff also brings claims against Credit One Bank and Synovus Bank for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## THE PARTIES

9.      Plaintiff Malisa Elizabeth Jennrich is a natural person who resides in the Village of Bay City, County of Pierce, State of Wisconsin, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

10.      Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of Wisconsin, including within this District.

11.      Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

12.      Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign corporation with a principal place of business located at 475 Anton Blvd., Costa Mesa, California 92626, and is authorized to do business in the State of Wisconsin, including within this District.

13.      Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

14.      Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company with a principal place of business located at 555 W Adams St., Chicago, Illinois 60661 and is authorized to do business in the State of Wisconsin, including within this District.

15.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

16.     Defendant Credit One Bank, N.A. ("Defendant Credit One Bank" or "Credit One Bank") is a national banking association with its principal place of business located at 6801 S. Cimarron Rd., Las Vegas, Nevada 89113, and is authorized to do business in the State of Wisconsin, including within this District.

17.     Credit One Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

18.     Defendant Synovus Bank ("Defendant Synovus Bank" or "Synovus Bank") is an American financial services company with its principal place of business located at 33 West 14th Street, 4th Floor, Columbus, Georgia 31901, and is authorized to do business in the State of Wisconsin, including within this District.

19.     Synovus Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The Credit Bureau Defendants' Processing of Credit Information

22.     The Credit Bureau Defendants regularly receive information about consumers from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

23.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

24.     The Credit Bureau Defendants collect information from thousands of furnishers.

25.     The process by which the Credit Bureau Defendants receive, sort, and store information is largely electronic.

26.     Furnishers, such as Credit One Bank and Synovus Bank, report credit information to the national credit bureaus, Equifax, Experian, and Trans Union, through the use of coded tapes that are transmitted to the Credit Bureau Defendants on a monthly basis through software known as Metro 2.

27.     The Credit Bureau Defendants take the credit information reported by furnishers and create consumer credit files.

28.     The Credit Bureau Defendants maintain credit files on more than 200 million consumers.

29.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts, which are sometimes referred to within the industry as "tradelines."

### An Identity Thief Opens a Fraudulent Account with Credit One Bank
### in Plaintiff's Name

30.     On or about November 29, 2022, unbeknownst to Plaintiff and without Plaintiff's consent, an imposter obtained a credit card through Credit One Bank in Plaintiff's name and began making purchases using a Credit One Bank credit card.

31.     When opening the Credit One Bank credit card, the imposter is believed to have

used Plaintiff's name; Plaintiff's Social Security number; an address in Saint Paul, Minnesota, where Plaintiff has never resided; and a phone number Plaintiff has never used or ever been associated with.

32. On December 14, 2022, the day the Credit One Bank credit card was activated by the imposter, Plaintiff was in the hospital giving birth to her first child via C-section. Thus, Plaintiff could not have possibly activated the Credit One Bank card that day or consented to same.

33. Between November 29, 2022, and September 2023, the imposter racked up a total of $1,583.00 in fraudulent charges on the Credit One Bank credit card.

34. According to Plaintiff's credit reports, the imposter made timely payments on the Credit One Bank account between November 2022 and February 2023; however, the imposter failed to make any payments following February 2023 and, as of August 2023, the Credit One Bank account was 180 days past due and was then charged off in September 2023.

35. Following Credit One Bank's decision to charge off the account in September 2023, the delinquent account was closed and sold to collections, specifically, to Resurgent Receivables, LLC.

36. Between December 2022 and at least May 2025, Credit One Bank, and thereafter, Resurgent Receivables, LLC, both furnished credit history information regarding the fraudulent account to the national credit reporting agencies, Equifax, Experian, and Trans Union.

**An Identity Thief Opens a Fraudulent Account with Synovus Bank
in Plaintiff's Name**

37. On or about December 6, 2022, unbeknownst to Plaintiff and without Plaintiff's consent, an imposter obtained a credit card through Synovus Bank in Plaintiff's name and began making purchases using a First Digital Mastercard credit card (the credit card issued by Synovus Bank, hereinafter the "First Digital credit card").

38. When opening the First Digital credit card through Synovus Bank, the imposter is believed to have used Plaintiff's name; Plaintiff's Social Security number; an address in Saint Paul, Minnesota, where Plaintiff has never resided; and a phone number Plaintiff has never used or ever

been associated with.

39.    Between December 6, 2022, and February 2023, the imposter racked up a total of $1,134.00 in fraudulent charges on the First Digital credit card.

40.    According to Plaintiff's credit reports, the imposter made timely payments on the Synovus account between December 2022 and February 2023; however, the imposter failed to make any payments following February 2023 and, as of June 2023, the account was over 90 days past due and was then charged off.

41.    Following Synovus Bank's decision to charge off the account in June 2023, the delinquent account was closed and sold to collections, specifically, to LVNV Funding, LLC.

42.    Between December 2022 and at least May 2025, Synovus Bank, and thereafter, LVNV Funding, LLC, both furnished credit history information regarding the fraudulent account to the national credit reporting agencies, Equifax, Experian, and Trans Union.

**Plaintiff Discovers and Disputes the Fraudulent Credit Card Accounts with Equifax, Experian, and Trans Union in or About July 2023**

43.    In or about mid-July 2023, Plaintiff received a First Digital Card statement in the mail from Synovus Bank seeking payment of the full, unpaid balance in the amount of $1,134.77.

44.    Plaintiff was shocked and confused upon receiving the First Digital Card statement, as she had never done business with Synovus Bank in the past and had never applied for or used a First Digital credit card.

45.    Shortly thereafter, in or about mid-July 2023, Plaintiff obtained copies of her Equifax, Experian, and Trans Union credit reports to inquire further. Upon reviewing her credit reports, Plaintiff discovered that all three of the credit bureaus were reporting the following two fraudulent credit card accounts that she neither recognized nor opened: Credit One Bank and Synovus Bank.

46.    Plaintiff was shocked and surprised upon her discovery of the two fraudulent accounts, as she did not open the credit card accounts, did not otherwise consent to them being opened, and did not previously know they even existed.

7

47.     Shortly after discovering the existence of the fraudulent accounts in mid-July 2023, Plaintiff 1) disputed the four fraudulent accounts with Equifax, Experian, and Trans Union both online and via phone, and 2) submitted requests to Equifax, Experian, and Trans Union to freeze her credit reports in an attempt to prevent the imposter from opening additional fraudulent credit cards.

**The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

48.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

49.     Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

50.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

51.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

52.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

53.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

54.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

55.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

56.     The data furnishers, like Credit One Bank and Synovus Bank, then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

57.     Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**The Credit Bureau Defendants' Responses to Plaintiff's July 2023 Disputes**

58.     Upon receiving Plaintiff's online and telephonic disputes in or about mid-July 2023, Equifax, Experian, and Trans Union sent ACDVs to the furnishers, Credit One Bank and Synovus Bank, regarding the following credit accounts, which Plaintiff disputed:

a)  SYNOVUS/FIRSTDIGITAL
    Account Number: XXXXXXXXXXXX1675
    Date Opened: Dec 06, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023
    Account Status: CHARGE_OFF
    Charge Off Amount: $1,134

b)  CREDIT ONE BANK
    Account Number: XXXXXXXXXXXX8848
    Date Opened: Nov 29, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023

9

Account Status: CHARGE_OFF
Charge Off Amount: $1,583

59.     Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Experian, and Trans Union, Synovus Bank verified for each of the Credit Bureau Defendants that Account number ending in 1675 belongs to Plaintiff.

60.     Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Experian, and Trans Union, Credit One Bank verified for the Credit Bureau Defendants that Account number ending in 8848 belongs to Plaintiff.

61.     In or about August 2023, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

62.     In about August 2023, Experian and Trans Union completed their reinvestigations of Plaintiff's disputes and returned the results of their 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff, verifying the disputed Synovus Bank and Credit One Bank accounts as belonging to Plaintiff.

63.     The Credit Bureau Defendants each failed to conduct a reasonable reinvestigation of Plaintiff's July 2023 disputes, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

64.     Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by the Credit Bureau Defendants, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

65.    Thereafter, the Credit Bureau Defendants failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit files and reports and continued to report the disputed fraudulent accounts thereafter.

**Plaintiff's Second Dispute with the Credit Bureau Defendants in October 2023**

66.    On or about October 23, 2023, increasingly frustrated, stressed, and surprised that the Synovus Bank and Credit One Bank fraudulent accounts continued to appear on her credit reports, Plaintiff submitted a second online dispute with Equifax and Trans Union. Plaintiff specifically disputed the above-refenced Synovus Bank and Credit One Bank accounts. Plaintiff was unable to dispute with Experian at this juncture because she was unable to verify certain personal identification information contained in her Experian credit file, which was the result of the imposter using a fraudulent address, phone number, and email address when opening the fraudulent accounts.

**Equifax and Trans Union's Responses to Plaintiff's October 2023 Disputes**

67.    Upon receiving Plaintiff's online dispute on or about October 23, 2023, Equifax and Trans Union sent ACDVs to the furnishers, Synovus Bank and Credit One Bank, regarding the following credit accounts, which Plaintiff disputed:

a)  SYNOVUS/FIRSTDIGITAL
    Account Number: XXXXXXXXXXXX1675
    Date Opened: Dec 06, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023
    Account Status: CAHRGE_OFF
    Charge Off Amount: $1,134

b)  CREDIT ONE BANK
    Account Number: XXXXXXXXXXXX8848
    Date Opened: Nov 29, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023
    Account Status: CAHRGE_OFF
    Charge Off Amount: $1,583

68.    On or about October 23, 2023, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax and Trans Union, Synovus Bank verified for Equifax and Trans Union that Account number ending in 1675 belongs to Plaintiff.

69.    Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax and Trans Union, Credit One Bank verified for Equifax and Trans Union that Account number ending in 8848 belongs to Plaintiff.

70.    On or about October 23, 2023, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

71.    In about late October 2023, Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff, verifying the disputed Synovus Bank and Credit One Bank accounts as belonging to Plaintiff.

72.    Equifax and Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 disputes, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

73.    Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by Equifax and Trans Union, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

74.    Thereafter, Equifax and Trans Union failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit files and reports and continued to report the disputed fraudulent accounts thereafter.

75.    By this point in time, Plaintiff began to get extremely stressed and worried about the fraudulent accounts and Synovus Bank, Credit One Bank, and the Credit Bureau Defendants'

repeated failure to delete same from her credit reports because she and her fiancé had started looking to buy a new house and were planning to apply for mortgage financing in November 2023.

### Plaintiff Files an Identity Theft Report with the Federal Trade Commission in November 2023

76.     On November 7, 2023, Plaintiff, starting to lose hope but refusing to continue living with the serious financial consequences caused by the fraudulent credit accounts continuing to report on her credit reports, filed an Identity Theft Report with the Federal Trade Commission ("FTC"). When submitting the FTC Identity Theft Report, there was only a field to enter one fraudulent credit card, so Plaintiff entered information regarding the fraudulent Synovus Bank account with a total fraudulent amount of $1,134.00. Plaintiff provided all of her personal identification information, as well as a list of other fraudulent information appearing on her credit reports, which belongs to the imposter, and signed the FTC Identity Theft Report under penalty of perjury.

### Plaintiff and her Fiance's Joint Home Mortgage Loan Application is Denied by Zillow Home Loans in November 2023

77.     In or about late October 2023, Plaintiff and her fiancé, Alex, began searching for a new home to buy for their growing family in and around Bay City, Wisconsin. Plaintiff and her fiancé found a house listed at approximately $225,000.00 in Bay City, Wisconsin, that suited their family's needs.

78.     In or about early November 2023, after working with John Anding ("Mr Anding"), a Mortgage Loan Officer at Zillow Home Loans, Plaintiff and her fiancé were preapproved for up to $250,000.00 in financing for a home.

79.     Shortly thereafter, Plaintiff and her fiancé, Alex, submitted a joint credit application and other required documents to Mr. Anding in hopes of being approved for mortgage financing on the Bay City home.

13

80.     On or about November 14, 2023, Zillow Home Loans requested and obtained Plaintiff and Alex's credit reports from Equifax, Experian, and Trans Union, via a tri-merge credit report from Factual Data.

81.     As of November 14, 2023, Equifax, Experian, and Trans Union were still reporting both of the fraudulent and derogatory Synovus Bank and Credit One Bank accounts, both of which adversely impacted Plaintiff's credit scores.

82.     On or about November 14, 2023, Mr. Anding contacted Plaintiff and Alex and informed them that their joint credit application had been denied by Zillow Home Loans due to issues with Plaintiff's credit scores, particularly multiple fraudulent and derogatory collection accounts that were being reported by Equifax, Experian, and Trans Union.

83.     On or about November 14, 2023, Mr. Anding informed Plaintiff and Alex that the only way Zillow Home Loans might be able to approve them for mortgage loan financing is if Plaintiff was removed from the loan application and the application and related credit check proceeded under only Alex's name.

84.     On or about November 14, 2023, Mr. Anding removed Plaintiff from the home mortgage loan application and proceeded with funding the loan using only Alex's credit scores.

85.     Due to Equifax, Experian, and Trans Union's inaccurate reporting, Plaintiff was denied the credit she sought and needed from Zillow Home Loans.

86.     Consequently, Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of Plaintiff's credit reports and the credit information they published and maintain concerning Plaintiff.

### Plaintiff's Second Dispute with Experian and Third Dispute with Equifax and in November 2023

87.     On or about November 18, 2023, increasingly frustrated, stressed, and surprised that the Synovus Bank and Credit One Bank fraudulent accounts continued to appear on her

14

Equifax and Experian credit reports, Plaintiff submitted a second online dispute to Experian and a third online dispute with Equifax. Plaintiff specifically disputed the above-refenced Synovus Bank and Credit One Bank accounts.

**Equifax and Experian's Responses to Plaintiff's November 2023 Disputes**

88.    Upon receiving Plaintiff's online dispute on or about November 18, 2023, Equifax and Experian sent ACDVs to the furnishers, Synovus Bank and Credit One Bank, regarding the following credit accounts, which Plaintiff disputed:

> a) SYNOVUS/FIRSTDIGITAL
>    Account Number: XXXXXXXXXXXX1675
>    Date Opened: Dec 06, 2022
>    Payment Responsibility: INDIVIDUAL
>    Date of Last Payment: Jan 2023
>    Account Status: CAHRGE_OFF
>    Charge Off Amount: $1,134
>
> b) CREDIT ONE BANK
>    Account Number: XXXXXXXXXXXX8848
>    Date Opened: Nov 29, 2022
>    Payment Responsibility: INDIVIDUAL
>    Date of Last Payment: Jan 2023
>    Account Status: CAHRGE_OFF
>    Charge Off Amount: $1,583

89.    On or about November 28, 2023, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax and Experian, Synovus Bank verified for Equifax and Experian that Account number ending in 1675 belongs to Plaintiff.

90.    Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax and Experian, Credit One Bank verified for Equifax and Experian that Account number ending in 8848 belongs to Plaintiff.

91.    On or about November 28, 2023, Equifax and Experian completed their reinvestigations of Plaintiff's disputes and returned the results of their 15 U.S.C. § 1681i dispute reinvestigations to Plaintiff. Equifax and Experian reported to Plaintiff that, in regard to the

disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

92.     Equifax and Experian failed to conduct a reasonable reinvestigation of Plaintiff's November 2023 disputes, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

93.     Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by Equifax and Experian, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

94.     Thereafter, Equifax and Experian failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit files and reports and continued to report the disputed fraudulent accounts thereafter.

### Plaintiff files a Police Report with the St. Paul Police Department in December 2023

95.     On or about December 4, 2023, Plaintiff contacted the St. Paul, Minnesota Police Department and filed a police report, Report Number 23816941, regarding the identity theft she had recently experienced.

96.     The police report included, among other relevant information, the following narrative:

> My identity was stolen last year multiple credit cards were opened in my name. I froze my credit during this time but this card is being sent to collections and it is not mine. I have no knowledge of the account or who's it is. I don't know who may have done this but an address was added to my credit that I have never lived at. I included screen shots of the card and addresses and when I filed for fraud.
>
> I am willing to prosecute.

97.     Plaintiff also attached four (4) pages of screen shots from her cell phone to the police report, screen shots which evidenced the fraudulent accounts, as reported on her credit

reports, and the fraudulent address that the imposter was using, also as reported on her credit reports, and the Identity Theft Report she filed with the FTC.

### Plaintiff's Fourth Dispute with Equifax in December 2023

98.    On or about December 11, 2023, increasingly frustrated, stressed, and surprised that the Synovus Bank and Credit One Bank fraudulent accounts continued to appear on her Equifax credit report, Plaintiff submitted a fourth online dispute with Equifax. Plaintiff specifically disputed the above-refenced Synovus Bank and Credit One Bank accounts.

### Equifax's Response to Plaintiff's December 2023 Dispute

99.    Upon receiving Plaintiff's online dispute on or about December 11, 2023, Equifax, sent ACDVs to the furnishers, Synovus Bank and Credit One Bank, regarding the following credit accounts, which Plaintiff disputed:

 a) SYNOVUS/FIRSTDIGITAL
    Account Number: XXXXXXXXXXXX1675
    Date Opened: Dec 06, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023
    Account Status: CAHRGE_OFF
    Charge Off Amount: $1,134

 b) CREDIT ONE BANK
    Account Number: XXXXXXXXXXXX8848
    Date Opened: Nov 29, 2022
    Payment Responsibility: INDIVIDUAL
    Date of Last Payment: Jan 2023
    Account Status: CAHRGE_OFF
    Charge Off Amount: $1,583

100.    On or about December 16, 2023, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Synovus Bank verified for Equifax that Account number ending in 1675 belongs to Plaintiff.

101. Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Credit One Bank verified for Equifax that Account number ending in 8848 belongs to Plaintiff.

102. On or about December 16, 2023, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

103. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2023 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

104. Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by Equifax, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

105. Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

**Plaintiff's Fifth Dispute with Equifax in January 2024**

106. On or about January 20, 2024, growing increasingly frustrated, stressed, and surprised that the Synovus Bank and Credit One Bank fraudulent accounts continued to appear on her Equifax credit report, Plaintiff submitted a fifth online dispute with Equifax. Plaintiff specifically disputed the above-refenced Synovus Bank and Credit One Bank accounts.

18

**Equifax's Response to Plaintiff's January 2024 Dispute**

107.    Upon receiving Plaintiff's online dispute on or about January 20, 2024, Equifax, sent ACDVs to the furnishers, Synovus Bank and Credit One Bank, regarding the following credit accounts, which Plaintiff disputed:

       a)  SYNOVUS/FIRSTDIGITAL
           Account Number: XXXXXXXXXXXX1675
           Date Opened: Dec 06, 2022
           Payment Responsibility: INDIVIDUAL
           Date of Last Payment: Jan 2023
           Account Status: CAHRGE_OFF
           Charge Off Amount: $1,134

       b)  CREDIT ONE BANK
           Account Number: XXXXXXXXXXXX8848
           Date Opened: Nov 29, 2022
           Payment Responsibility: INDIVIDUAL
           Date of Last Payment: Jan 2023
           Account Status: CAHRGE_OFF
           Charge Off Amount: $1,583

108.    On or about January 22, 2024, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Synovus Bank verified for Equifax that Account number ending in 1675 belongs to Plaintiff.

109.    Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Credit One Bank verified for Equifax that Account number ending in 8848 belongs to Plaintiff.

110.    On or about January 22, 2024, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

111.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's January 20, 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

112.    Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by Equifax, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

113.    Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

**Plaintiff Receives Written Correspondence from Resurgent Capital Services L.P.
Regarding the Fraudulent Synovus Bank Account in July 2024**

114.    On or about July 19, 2024, Plaintiff received written correspondence in the mail from Resurgent Capital Services L.P., the debt collector collecting Account number ending in 1675 on behalf of Synovus Bank, stating, in relevant part, the following:

> This letter is in response to a recent communication regarding identity theft or fraudulent charges in connection with the above-referenced account (Synovus Bank account ending in 1675). Account level document has been enclosed for review. A review of the claim and account has been completed. Based upon this, we were unable to validate your claim.

115.    Plaintiff was shocked and confused as to why Synovus Bank/Resurgent Capital Services refused to understand and accept the fact that the account does not belong to her and was opened fraudulently and became increasingly stressed and anxious at the fact that Synovus Bank/Resurgent Capital Services refused to delete the fraudulent account and continued to furnish data regarding the account to the Credit Bureau Defendants.

**Plaintiff Files a Complaint with the Consumer Financial Protection Bureau
("CFPB") in January 2025**

116.    On or about January 31, 2025, Plaintiff submitted an online Complaint with the

CFPB pleading for help to get the Credit Bureau Defendants to remove the fraudulent Synovus

Bank and Credit One Bank accounts from her credit reports.

117.    Plaintiff attached multiple supporting documents to her CFPB Complaint

regarding the fraudulent credit accounts and provided the following narrative:

> My identity was stolen in 2022 and multiple credit cards were opened in my name.
> I was able to remove some but the two remaining card (sic) from Credit One and
> Synovus bank still remain. I have disputed with all credit bureaus, credit karma
> along with filing a police report for said cards, incorrect address, phone number, &
> email associated with these accounts. Credit one: $1134 unsure of the original
> opened date. Synovus bank: $1583 unsure of original opened date. I'm at loss I'm
> not sure what to do at this point.

**Plaintiff's Sixth Dispute with Equifax in February 2025**

118.    On or about February 11, 2025, growing increasingly frustrated, stressed, and

surprised that the Synovus Bank and Credit One Bank fraudulent accounts continued to appear

on her Equifax credit report, Plaintiff submitted a sixth online dispute with Equifax. Plaintiff

specifically disputed the above-refenced Synovus Bank and Credit One Bank accounts.

**Equifax's Response to Plaintiff's February 2025 Dispute**

119.    Upon receiving Plaintiff's online dispute on or about February 11, 2025, Equifax,

sent ACDVs to the furnishers, Synovus Bank and Credit One Bank, regarding the following credit

accounts, which Plaintiff disputed:

        a) SYNOVUS/FIRSTDIGITAL
           Account Number: XXXXXXXXXXXX1675
           Date Opened: Dec 06, 2022
           Payment Responsibility: INDIVIDUAL
           Date of Last Payment: Jan 2023
           Account Status: CAHRGE_OFF
           Charge Off Amount: $1,134

        b) CREDIT ONE BANK

Account Number: XXXXXXXXXXXX8848
Date Opened: Nov 29, 2022
Payment Responsibility: INDIVIDUAL
Date of Last Payment: Jan 2023
Account Status: CAHRGE_OFF
Charge Off Amount: $1,583

120.     In or about February 2025, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Synovus Bank verified for Equifax that Account number ending in 1675 belongs to Plaintiff.

121.     Following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Credit One Bank verified for Equifax that Account number ending in 8848 belongs to Plaintiff.

122.     In or about February 2025, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

123.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's February 11, 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

124.     Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information available to it, as provided by Equifax, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

125.     Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

22

**Plaintiff Receives Written Correspondence from Credit One Bank Regarding the
Fraudulent Account and in Response to Her CFPB Complaint in February 2025**

126.    On or about February 8, 2025, Plaintiff received written correspondence from

Credit One Bank stating as follows:

RE: Account Number Ending in 8848 Case Number
20250203039

Dear Malisa Jennrich,

Credit One Bank received your communication on February 3, 2025, forwarded from the Consumer Financial
Protection Bureau.

We received your communication in which you stated that you never applied for the above-referenced account.
In response, we completed an investigation and determined the account to be authorized and not fraudulent based
on the following:

- A credit card and billing statements were sent to 1225 7th St E, Saint Paul, MN 55106, which has been verified
  as belonging to you.
- The account was activated on December 14, 2022, from phone number 763-329-5930. This number is
  registered to Malisa Elizabeth Jennrich.
- We received responses of "no fraud" to our transaction alerts sent to you by text/email.

Due to unauthorized payment activity, the account charged off on August 11, 2023, with a balance of $1,583.07.
The ownership of the account was transferred to the party referenced below. Since Credit One Bank no longer
has a financial interest in this account, please contact the party listed below.

Resurgent Receivables, LLC
P.O. Box 10497
Greenville, SC 29603
877-550-2459

All debt collection communication from Credit One Bank regarding this credit card account ceased when the
account was sold. Any current collection efforts on this account are not on behalf of Credit One Bank.

127.    Plaintiff has never resided at or been associated with the address 1225 7th St. E,

Saint Paul, MN 55106.

128.    Plaintiff has never used, been assigned, or been associated with the phone number

763-329-5930.

129.    Plaintiff never received any transaction alerts via text message or email from Credit

One Bank and any of the above-referenced transaction alerts would have been sent to the phone

number (presumably, 763-329-5930) and/or email the imposter used to open the fraudulent

account.

**Capital One Denies Plaintiff's Credit Card Application in April 2025**

130.    On or about April 12, 2025, and needing a credit card to make everyday purchases to support her family, Plaintiff applied online for a Capital One credit card.

131.    As part of her online application, Plaintiff provided her personal identification information, including her Social Security number, and authorized Capital One to request her credit reports and scores.

132.    On or about April 12, 2025, in order to determine whether Plaintiff qualified for the credit that she sought, Capital One purchased a copy of Plaintiff's credit report from Equifax.

133.    Capital One could not pre-approve Plaintiff for a credit card and denied Plaintiff's credit application.

134.    On or about April 12, 2025, Equifax published a credit report regarding Plaintiff to Capital One that included four fraudulent, derogatory credit tradelines that she had previously disputed numerous times and which were opened by the imposter: Synovus/First Digital, LVNV Funding LLC, Credit One Bank, and Resurgent Receivables LLC.

135.    In the week that followed, Capital One mailed Plaintiff written correspondence, dated April 12, 2025, confirming her credit denial. Capital One's denial letter specifically referenced the following key factors that adversely affected Plaintiff's Equifax credit score: 1) proportion of account balance(s) to income is too high; 2) serious delinquency; 3) length of time accounts have been established; 4) proportion of balances to credit limits is too high on bank revolving or other revolving accounts; and 5) time since delinquency is too recent or unknown.

136.    Equifax's credit report regarding Plaintiff was grossly inaccurate: none of the four (4) above-refenced derogatory, fraudulent credit tradelines belong to Plaintiff. The accounts were opened by an imposter using personal identification information, some of which does not match or belong to Plaintiff.

137.    Due to Equifax's inaccurate reporting, Plaintiff was denied the credit she sought and needed from Capital One.

138.    Consequently, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of Plaintiff's credit report and the credit information it published and maintains concerning Plaintiff.

**Plaintiff's Third Disputes with Experian and Trans Union, and Seventh Dispute with Equifax in April 2025**

139.    On or about April 18, 2025, Plaintiff concerned, stressed, and anxious about Equifax, Experian, and Trans Union's continued inaccurate credit reporting and its subsequent impact on her ability to obtain credit, mailed letters to Equifax, Experian, and Trans Union, via First-Class certified mail, disputing the fraudulent credit tradelines associated with the Synovus Bank and Credit One Bank accounts, which appeared on her three credit reports as follows:

**EQUIFAX:**

1.  **SYNOVUS/FIRSTDIGITAL**
    Account Number: ending in 1675
    Date Opened: Dec 06, 2022
    Account Status: Charge Off
    Charge Off Amount: $1,134
2.  **CREDIT ONE BANK**
    Account Number: ending in 8848
    Date Opened: Nov 29, 2022
    Account Status: Charge Off
    Charge Off Amount: $1,583

**EXPERIAN:**

1.  **1ST DIGITAL/SYNOVUS/VT**
    Account Number: 526449020490****
    Original Creditor: Synovus Bank, Sold to Resurgent Acquisitions LLC
    Date Opened: Jul 2023
    Status: Closed. $1,134 written off
    High Balance: $1,134

2.  **RC/RESURGENT RECEIVABLES**
    Account Number: 37936302901****
    Original Creditor: Credit One American Express

Date Opened: Sep 2023
Status: Collection account. $1,583 past due as of Feb 2025
Recent Balance: $1,583 as of Feb 2025

**TRANS UNION:**

1. **SYNVS/FIRSTD**
   Account Number: 526449020490****
   Date Opened: 12/06/2022
   Pay Status: Sold; was Charge-off
   Charge Off Amount: $1,134

2. **LVNV FUNDING LLC**
   Account Number: 526449020490****
   Date Opened: 07/17/2023
   Pay Status: Collection
   High Balance: $1,134
   Past Due: $1,134

3. **RESURGENT RECEIVABLES LLC**
   Account Number: 37936302901****
   Date Opened: 09/26/2023
   Pay Status: Collection
   High Balance: $1,583
   Past Due: $1,583

140.    As part of her dispute letters, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Credit One Bank; and a copy of her inaccurate Equifax, Experian, and Trans Union credit reports.

141.    Plaintiff insisted that the disputed accounts were opened fraudulently and requested that Equifax, Experian, and Trans Union remove the disputed accounts from her credit files and reports.

142.    Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting, and send her a corrected copy of her credit reports.

**Equifax, Experian, and Trans Union's Responses to Plaintiff's April 2025 Disputes**

143.    On or about April 25, 2025, Plaintiff received written correspondence from Trans Union via mail including its "Investigation Results." Trans Union deleted all three of the fraudulent credit tradelines disputed by Plaintiff: SYNVS/FIRSTD, LVNV FUNDING LLC, and RESURGENT RECEIVABLES LLC.

144.    On or about May 3, 2025, Plaintiff received written correspondence from Experian via mail including its "Dispute Results." Experian deleted all three of the fraudulent credit tradelines disputed by Plaintiff: SYNVS/FIRSTD, LVNV FUNDING LLC, and RESURGENT RECEIVABLES LLC.

145.    In or about late April or early May 2025, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Synovus Bank verified for Equifax that Account number ending in 1675 belongs to Plaintiff.

146.    In or about late April or early May 2025, and following its purported investigation of Plaintiff's dispute, as communicated to it by Equifax, Credit One Bank verified for Equifax that Account number ending in 8848 belongs to Plaintiff.

147.    On or about May 6, 2025, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax reported to Plaintiff that, in regard to the disputed Synovus Bank and Credit One Bank accounts: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED" without providing any further explanation.

148.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's April 18, 2025, dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

149.    Synovus Bank and Credit One Bank both failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information

available to it, as provided by Equifax, and failed to delete or otherwise remove the fraudulent accounts, in violation of 15 U.S.C. § 1681s-2(b)(1)(A-E).

150.    Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

**Plaintiff's Eighth Dispute with Equifax in June 2025**

151.    On or about June 5, 2025, Plaintiff, still concerned, stressed, and anxious about Equifax's continued inaccurate credit reporting and its subsequent impact on her ability to obtain credit, mailed another letter to Equifax, via First-Class certified mail, disputing the fraudulent credit tradelines associated with the Synovus Bank and Credit One Bank accounts, which appeared on her credit report as follows:

1.    **SYNOVUS/FIRSTDIGITAL**
Account Number: ending in 1675
Date Opened: Dec 06, 2022
Account Status: Charge Off
Charge Off Amount: $1,134

2.    **CREDIT ONE BANK**
Account Number: ending in 8848
Date Opened: Nov 29, 2022
Account Status: Charge Off
Charge Off Amount: $1,583

152.    As part of her dispute letter, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Credit One Bank; and a copy of her inaccurate Equifax credit report.

153.    Plaintiff insisted that the disputed accounts were opened fraudulently and requested that Equifax remove the disputed accounts from her credit file and report.

154.   Plaintiff requested that Equifax reinvestigate the disputed information, correct its reporting, and send her a corrected copy of her credit report.

**Equifax's Response to Plaintiff's June 2025 Dispute**

155.   On or about June 18, 2025, Plaintiff received written correspondence from Equifax via mail stating, among other information, as follows:

> Dear MALISA ELIZABETH JENNRICH:
>
> We have received your request concerning blocking of certain information on your Equifax credit file.
>
> Please be advised that Equifax. at this time, is not blocking information you named in your request. pursuant to Section 605B(c) of the Fair Credit Reporting Act. We are, however. contacting each company that provided the disputed information to verify the information on your behalf. We will also forward a copy of the documents you have provided to each creditor for their review. You should receive the results of this investigation, which may result in removal of the disputed information. within 30 days.
>
> For Equifax to block information under Section 605B of the Fair Credit Reporting Act, you need to provide proof of your identity, the specific information that is the result of identity theft, and a copy of your complete and submitted Identity Theft Report with the Federal Trade Commission (available at identitytheft.gov) or police report regarding the identity theft.
>
> Thank you for the opportunity to assist you
>
> Equifax Information Services LLC

156.   This is a form letter that Equifax frequently sends consumers when it doesn't want to comply with its legal obligations under the FCRA, 15 U.S.C. § 1681i.

157.   Plaintiff's June 5, 2025, dispute letter and all documents attached thereto were clear and legible and provided Equifax with more than enough support to adequately reinvestigate her dispute regarding the fraudulent accounts.

158.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's June 2025 dispute, or any reinvestigation at all, and failed to delete the fraudulent accounts contained in Plaintiff's report, in violation of 15 U.S.C. § 1681i.

159.   Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

**Plaintiff Receives Written Correspondence from Credit One Bank Regarding the
Fraudulent Account in June 2025**

160.    On or about June 20, 2025, Plaintiff received written correspondence from Credit

One Bank stating as follows:

RE: Account Number Ending in 8848

Dear Malisa Jennrich,

Thank you for contacting Credit One Bank. We received your communication stating that you never applied for the above-referenced account. In response, we initiated an investigation and determined the following:

- A credit card and billing statements were sent to 1225 7th St E Saint Paul Mn 55106.
- The account was activated on December 14, .2022, from phone number 763-329-5930. This number is registered to Malisa Jennrich.

If you maintain that your identity was compromised, please provide a police report filed with local law enforcement. Please send the documents to the address listed below within 45 days for Credit One Bank to continue the investigation. If the documents are not received within that timeframe, your Claim may be unsubstantiated, and as a result, you may be held responsible for the account upon closure of the investigation.

As of the date of this letter, our records indicate this account has been sold to:

Resurgent Receivables, LLC
P.O. Box 10497
Greenville, SC 29603
877-550-2459

If you have additional questions, please call our Fraud Investigations Department at 888-362-0005 between 7:00 a.m. and 5:00 p.m., Monday through Friday (Pacific Time).

Sincerely,

Credit One Bank, N.A.

161.    Plaintiff has never resided at or been associated with the address 1225 7th St. E,

Saint Paul, MN 55106.

162.    Plaintiff has never used, been assigned, or been associated with the phone number

763-329-5930.

**Resurgent Receivables LLC, as Successor in Interest to Credit One Bank, Serves Plaintiff's Sister's Residence with a Wage Garnishment Summons in July 2025**

163.    On or about July 9, 2025, Messerli & Kramer PA, counsel for Resurgent Receivables, successor in interest to Credit One Bank, served Plaintiff's sister, who resides in Inver Grove Heights, Minnesota, copies of a Garnishment Summons, Earnings Garnishment Disclosure form, Nonwage Garnishment Disclosure form, Garnishment Exemption Notices, and written Interrogatories by, all of which were intended for Plaintiff.

164.    Upon learning of this, Plaintiff was beside herself. She became increasingly stressed and anxious about her financial situation and the realistic possibility that her wages might soon be garnished and lost a significant amount of sleep in the weeks and months that followed.

**Plaintiff Disputes the Fraudulent Account Directly with Resurgent Receivables in July 2025**

165.    On or about July 18, 2025, increasingly upset by the continued inaccurate reporting of the collections account and her multiple related credit denials, and in response to Credit One Bank's June 20, 2025 letter, Plaintiff mailed a letter to Resurgent Receivables, LLC, via First-Class certified mail, disputing the fraudulent Credit One Bank account appearing in her Equifax credit report.

166.    As part of her dispute letter, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Credit One Bank; and a copy of her inaccurate Equifax credit report.

167.    Plaintiff insisted that the disputed account was opened fraudulently and requested that Resurgent Receivables investigate the disputed account, confirm it is fraudulent, and discontinue its furnishing of information regarding the account to Equifax.

**Plaintiff's Ninth Dispute with Equifax in September 2025**

168.    On or about September 2, 2025, Plaintiff, still concerned, stressed, and anxious about Equifax's continued inaccurate credit reporting and its subsequent impact on her ability to obtain credit, mailed another letter to Equifax, via First-Class certified mail, disputing the fraudulent credit tradelines associated with the Synovus Bank and Credit One Bank accounts, which appeared on her credit report as follows:

1.  **SYNOVUS/FIRSTDIGITAL**
    Account Number: ending in 1675
    Date Opened: Dec 06, 2022
    Account Status: Charge Off
    Charge Off Amount: $1,134

2.  **CREDIT ONE BANK**
    Account Number: ending in 8848
    Date Opened: Nov 29, 2022
    Account Status: Charge Off
    Charge Off Amount: $1,583

169.    As part of her dispute letter, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Credit One Bank; and a copy of her inaccurate Equifax credit report.

170.    Plaintiff insisted that the disputed accounts were opened fraudulently and requested that Equifax remove the disputed accounts from her credit file and report.

171.    Plaintiff requested that Equifax reinvestigate the disputed information, correct its reporting, and send her a corrected copy of her credit report.

**Plaintiff Receives Written Correspondence from Debt Collector, Unifin, Regarding the Fraudulent Synovus Bank Account in September 2025**

172.    In or about early September 2025, Plaintiff received written correspondence via mail from Unifin, dated September 3, 2025, regarding the fraudulent, past due Synovus Bank

account. Unifin was attempting to collect on the fraudulent account on behalf of LVNV Funding LLC, the debt collector who purchased the debt from Synovus Bank.

173.    Unifin's letter stated, among other information, as follows:

Dear Malisa Jennrich:

This past due account has been referred to our agency for collection. This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

174.    Upon reading this letter, Plaintiff was shocked and appalled at Synovus Bank's relentless pursuit to collect this debt from her after she told it numerous times, through indirect disputes with the credit bureaus, that the account was fraudulent and opened by an imposter.

**Equifax's Response to Plaintiff's September 2025 Dispute**

175.    On or about September 14, 2025, Plaintiff received written correspondence from Equifax via mail stating, among other information, as follows:

Dear MALISA ELIZABETH JENNRICH:

We have received your request concerning blocking of certain information on your Equifax credit file.

Please be advised that Equifax. at this time, is not blocking information you named in your request. pursuant to Section 605B(c) of the Fair Credit Reporting Act.  We are, however. contacting each company that provided the disputed information to verify the information on your behalf.  We will also forward a copy of the documents you have provided to each creditor for their review.  You should receive the results of this investigation, which may result in removal of the disputed information. within 30 days.

For Equifax to block information under Section 605B of the Fair Credit Reporting Act, you need to provide proof of your identity, the specific information that is the result of identity theft, and a copy of your complete and submitted Identity Theft Report with the Federal Trade Commission (available at identitytheft.gov) or police report regarding the identity theft.

Thank you for the opportunity to assist you

Equifax Information Services LLC

176.    Again, this is a form letter that Equifax frequently sends consumers when it doesn't want to comply with its legal obligations under the FCRA, 15 U.S.C. § 1681i.

177.    Plaintiff's September 2, 2025, dispute letter and all documents attached thereto were clear and legible and provided Equifax with more than enough support to adequately reinvestigate her dispute regarding the fraudulent accounts.

178.    Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's September 2025 dispute, or any reinvestigation at all, and failed to delete the fraudulent accounts contained in Plaintiff's report, in violation of 15 U.S.C. § 1681i.

179.    Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

**Capital One Denies Plaintiff's Credit Application for Auto Loan Financing in October 2025**

180.    In or about early October 2025, Plaintiff, in desperate need of a new car, began car shopping and found a 2020 used Subaru Ascent that suited her and her family's needs. Plaintiff had been in need of a new car for multiple years but had put off trying to purchase and apply for credit for same due to the two fraudulent accounts that the Credit Bureau Defendants, Synovus Bank, and Credit One Bank refused to remove from her credit reports.

181.    On October 2, 2025, Plaintiff submitted a credit application in order to get pre-qualified for approximately $20,000.00 in auto financing with Capital One for the purchase of the 2020 Subaru Ascent.

182.    Capital One denied Plaintiff's credit application based solely on her credit score, as provided by Equifax.

183.    On or about October 10, 2025, Plaintiff received a credit denial letter in the mail from Capital One stating, in relevant part, the following:

> While we could not approve you, we're sharing why we made that decision, along with details on how this process can affect your credit reports. Key factors that adversely affected your credit score: 1) Serious delinquency, 2) length of time accounts have been established, 3) proportion of balances to credit limits is too high

on bank revolving or other revolving accounts, and 4) amount owed on revolving accounts is too high.

184.     At the time Equifax published Plaintiff's credit report to Capital One on October 2, 2025, Equifax was still reporting the two fraudulent and derogatory Synovus Bank and Credit One Bank accounts, which Plaintiff had previously disputed on at least nine (9) separate occasions.

**Plaintiff Disputes the Fraudulent Account Directly with Unifin in October 2025**

185.     On or about October 3, 2025, increasingly upset by the continued inaccurate reporting of the collections account and her multiple related credit denials, and in response to Unifin's September 3, 2025 letter, Plaintiff mailed a letter to Unifin, via First-Class certified mail, disputing the fraudulent Synovus Bank account appearing in her Equifax credit report, for which Unifin was attempting to collect.

186.     As part of her dispute letter, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Unifin; and a copy of her inaccurate Equifax credit report.

187.     Plaintiff insisted that the disputed account was opened fraudulently and requested that Unifin both provide validation of the debt and investigate the disputed account, confirm it is fraudulent, and discontinue its attempts to collect on the account.

**Plaintiff's Tenth Dispute with Equifax in October 2025**

188.     On or about October 3, 2025, Plaintiff, still concerned, stressed, and anxious about Equifax's continued inaccurate credit reporting and its subsequent impact on her ability to obtain credit, mailed another letter to Equifax, via First-Class certified mail, disputing the fraudulent credit tradelines associated with the Synovus Bank and Credit One Bank accounts, which appeared on her credit report as follows:

1. **SYNOVUS/FIRSTDIGITAL**
   Account Number: ending in 1675
   Date Opened: Dec 06, 2022
   Account Status: Charge Off
   Charge Off Amount: $1,134

2. **CREDIT ONE BANK**
   Account Number: ending in 8848
   Date Opened: Nov 29, 2022
   Account Status: Charge Off
   Charge Off Amount: $1,583

189.    As part of her dispute letter, Plaintiff provided sufficient personal identification information, including her full name, date of birth, and current address; a photocopy of her current Wisconsin Driver's License; a copy of the Police Report she filed with the St. Paul Police Department; a copy of her FTC Identity Theft Report; a copy of her CFPB Complaint; a copy of the letter she received from Credit One Bank; and a copy of her inaccurate Equifax credit report.

190.    Plaintiff insisted that the disputed accounts were opened fraudulently and requested that Equifax remove the disputed accounts from her credit file and report.

191.    Plaintiff requested that Equifax reinvestigate the disputed information, correct its reporting, and send her a corrected copy of her credit report.

**Equifax's Response to Plaintiff's October 2025 Dispute**

192.    On or about October 17, 2025, Plaintiff received written correspondence from Equifax via mail stating, among other information, as follows:

Dear MALISA ELIZABETH JENNRICH:

We have received your request concerning blocking of certain information on your Equifax credit file.

Please be advised that Equifax. at this time, is not blocking information you named in your request. pursuant to Section 605B(c) of the Fair Credit Reporting Act. We are, however. contacting each company that provided the disputed information to verify the information on your behalf. We will also forward a copy of the documents you have provided to each creditor for their review. You should receive the results of this investigation, which may result in removal of the disputed information. within 30 days.

For Equifax to block information under Section 605B of the Fair Credit Reporting Act, you need to provide proof of your identity, the specific information that is the result of identity theft, and a copy of your

complete and submitted Identity Theft Report with the Federal Trade Commission (available at identitytheft.gov) or police report regarding the identity theft.

Thank you for the opportunity to assist you

Equifax Information Services LLC

193.    Again, this is a form letter that Equifax frequently sends consumers when it doesn't want to comply with its legal obligations under the FCRA, 15 U.S.C. § 1681i.

194.    Plaintiff's October 3, 2025, dispute letter and all documents attached thereto were clear and legible and provided Equifax with more than enough support to adequately reinvestigate her dispute regarding the fraudulent accounts.

195.    Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 2025 dispute, or any reinvestigation at all, and failed to delete the fraudulent accounts contained in Plaintiff's report, in violation of 15 U.S.C. § 1681i.

196.    Thereafter, Equifax failed to delete or otherwise remove the inaccurate and fraudulent accounts appearing in Plaintiff's credit file and report and continued to report the disputed fraudulent accounts thereafter.

197.    As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

198. Consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the furnishers, Synovus Bank and Credit One Bank, in this instance, provided its responses to Plaintiff's disputes, verifying the accounts as accurate and belonging to Plaintiff, and no employee from any of the credit reporting agencies took any additional steps to review Plaintiff's documentation after the furnishers provided their responses to Plaintiff's numerous disputes.

199. Instead, Equifax, Experian, and Trans Union blindly accepted Synovus Bank and Credit One Bank's incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

200. Equifax, Experian, and Trans Union continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

201. The Credit Bureau Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

202. Instead, the Credit Bureau Defendants intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

203. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered a wide range of actual damages including, without limitation, being denied credit; loss of credit; loss of the ability to purchase and benefit from her good name credit rating; detriment to her credit rating; being chilled from applying for other credit opportunities; the expenditure of significant time and money disputing and trying to correct the inaccurate credit reporting over multiple years' time; economic loss; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep;

fear of financial ruin and being unable to provide adequately for her family; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having two fraudulent collection accounts that do not belong to her published to her current and potential creditors.

204.    At all times pertinent hereto, the Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

205.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in negligent disregard for federal law and Plaintiff's rights.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedure to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

206.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-205, as if fully stated herein.

207.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

208.    On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

209.    Despite knowledge that the disputed accounts were fraudulent, and the fact that the police report had been provided to them and was public record, the Credit Bureau Defendants readily sold false credit reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

210.    The Credit Bureau Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of the credit reports and credit files they published and maintain concerning Plaintiff.

211.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered a wide range of actual damages including, without limitation, being denied credit; loss of credit; loss of the ability to purchase and benefit from her good name credit rating; detriment to her credit rating; being chilled from applying for other credit opportunities; the expenditure of significant time and money disputing and trying to correct the inaccurate credit reporting over multiple years' time; economic loss; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin and being unable to provide adequately for her family; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having two fraudulent collection accounts that do not belong to her published to her current and potential creditors.

212.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

213.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to Perform Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax, Experian,**
**and Trans Union)**

214.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-205, as if fully stated herein.

215.    The FCRA mandates that a credit reporting agency conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

216.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from a consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

217.    The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing, on multiple occasions, to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files and reports.

218.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered a wide range of actual damages including, without limitation, being denied credit; loss of credit; loss of the ability to purchase and benefit from her good name credit rating; detriment to her credit rating; being chilled from applying for other credit opportunities; the expenditure of significant time and money disputing and trying to correct the inaccurate credit reporting over multiple years' time; economic loss; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin and being unable to provide adequately for her family; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having two fraudulent collection accounts that do not belong to her published to her current and potential creditors.

219.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be

determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

220.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or § 1681o.

**COUNT III**
**15 U.S.C. § 1681c-2(a)**
**Failure to Block Information Resulting from Identity Theft**
**(Third Claim for Relief Against Defendant Equifax)**

221.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-205, as if fully stated herein.

222.    The FCRA proscribes the means by which consumers can request that CRAs block information they believe to be the result of identity theft from their credit file. *See* 15 U.S.C. § 1681c-2(a).

223.    Within four (4) business days of a consumer identifying information on their credit file that is reporting as the result of identity theft, and upon receipt of appropriate proof of the consumer's identity, a copy of an identity theft report, the identification of fraudulent information by the consumer, and a statement by the consumer that is not the result of a transaction by that consumer, the CRA must block its reporting of the information. *See* 15 U.S.C. § 1681c-2(a)(1-4).

224.    A CRA shall only decline to block or rescind a previous block if it determines that the information was blocked in error, the consumer made a material misrepresentation of fact when requesting the block, or the consumer obtained possession of the good, services, or money at issue in the transaction. *See* 15 U.S.C. § 1681c-2(c)(1). A CRA must provide notice to the consumer that it is declining to or rescinding a previous block within five (5) business days. *See* 15 U.S.C. § 1681c-2(c)(2).

225.    Defendant Equifax violated 15 U.S.C. § 1681c-2(a) on multiple occasions between April 2025 and the present date by declining to block its reporting of the Credit One Bank and

Synovus Bank accounts in response to the notices of dispute provided by Plaintiff with the required supporting documentation.

226.    As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, dissemination of false information regarding his credit activity and history to his current and potential landlord and creditors; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; loss of the ability to purchase and benefit from his good name and credit rating; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of the repercussions of identity theft and the Defendant Equifax's failure to properly address and rectify the situation pursuant to the FCRA's clear statutory mandates.

227.    Defendant Equifax's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

228.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
## (First Claim for Relief Against Defendants Synovus Bank and Credit One Bank)

229.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-205, as if fully stated herein.

230.    Defendants Synovus Bank and Credit One Bank furnished inaccurate information regarding the fraudulent accounts on multiple occasions to Equifax, Experian, and Trans Union.

231.    Defendants Synovus Bank and Credit One Bank furnished inaccurate information regarding the fraudulent accounts on multiple occasions between December 2022 and the present date to Equifax, Experian, and Trans Union.

232.    Defendants Synovus Bank and Credit One Bank violated 15 U.S.C. § 1681s-2(b) on multiple occasions by failing to fully and properly investigate Plaintiff's disputes of their inaccurate representations; by failing to review all relevant information regarding the same as provided to them from the Credit Bureau Defendants via ACDVs; and by failing to correct their inaccurate reporting and communicate the same to the Credit Bureau Defendants within the 30-day time frame provided in the FCRA.

233.    As a result of Defendants Synovus Bank and Credit One Bank's conduct, action, and inaction, Plaintiff suffered a wide range of actual damages including, without limitation, being denied credit; loss of credit; loss of the ability to purchase and benefit from her good name credit rating; detriment to her credit rating; being chilled from applying for other credit opportunities; the expenditure of significant time and money disputing and trying to correct the inaccurate credit reporting over multiple years' time; economic loss; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin and being unable to provide adequately for her family; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having two fraudulent collection accounts that do not belong to her published to her current and potential creditors.

234.    Defendants Synovus Bank and Credit One Bank's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

235.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Synovus Bank and Credit One Bank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)      Determining that each Defendant negligently and/or willfully violated the FCRA;

b)      Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)      Awarding Plaintiff reasonable attorneys' fees and costs from each Defendant as provided by the FCRA; and

d)      Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

236.    Plaintiff demands a trial by jury.

Dated: November 3, 2025

_/s/ Hans W. Lodge_____
Hans W. Lodge, WI Bar No. 1096313
Ivy L. Marsnik MN Bar No. 0403177*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bergermontague.com
Email: imarsnik@bergermontague.com
*Pro Hac Vice Forthcoming*

*ATTORNEYS FOR PLAINTIFF*